UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TERRENCE SLATER,

       Petitioner,                  **No. 11-CV-0047(MAT)**

   -vs-                         **DECISION AND ORDER**

JAMES T. CONWAY,

       Respondent.

## I.    Introduction

Terrence Slater ("Slater" or "Petitioner") proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the basis that he is being held in Respondent's custody in violation of his federal constitutional rights. Petitioner is incarcerated as the result of a judgment on August 14, 2007, in Ontario County Court of New York State, following a jury trial convicting him of Criminal Sale of a Controlled Substance in the Third Degree (New York Penal Law ("P.L.") § 220.39(1)), Criminal Possession of a Controlled Substance in the Third Degree (P.L. § 220.16(1)), and Criminal Possession of a Controlled Substance in the Fourth Degree (P.L. § 220.09(1)).

## II.   Factual Background and Procedural History

### A.    Overview

The convictions here at issue stem from Petitioner's sale of cocaine to a confidential informant for the Geneva Police Department on October 5, 2006. Also involved in the sale were

Petitioner's acquaintances, Tawyna Allen ("Allen") and Patrick Ray ("Ray"). All three were arrested when the police raided Allen's apartment. Petitioner and Ray were charged separately with the same three crimes, and their cases were later consolidated for trial.

Allen pled guilty on April 24, 2007, to third degree criminal sale of a controlled substance, third degree criminal possession of a controlled substance, and fourth degree criminal possession of a controlled substance. She received five years of incarceration plus three years of post-release supervision.

On June 12, 2007, Petitioner and Ray proceeded to trial. A summary of the pertinent trial testimony follows.

**B.   The Trial**

**1.   The Prosecution's Case**

Bernard Thomas ("Thomas"), a cocaine addict and police informant, encountered Allen at a drugstore on October 5, 2006, in Geneva, New York.   Allen whispered into Thomas's ear, "Uncle Bernie, I got product[,]" meaning that she had drugs. She introduced Thomas to Petitioner and told Thomas that Petitioner could get drugs for him. T.344.

Later that night, Thomas went to Allen's apartment where Ray and Petitioner also were present. T.346-48. Petitioner pulled out a bag of crack cocaine from inside a chair, and from the couch, Ray pulled out a bag of crack cocaine wrapped up like a softball. T.351. Petitioner and Ray asked if Thomas wanted to buy these

drugs. They told him that if he knew other people who wanted drugs, he should let them know they would be selling out of Allen's apartment. Petitioner and Ray also told Thomas that if he brought new customers, they would give him free drugs in exchange. T.352.

After Thomas left Allen's apartment, he called the Geneva Police Department and told Detective Brian Choffin ("Choffin") of his meeting with Petitioner, Ray, and Allen. T.258-60, 354. Thomas met with Choffin and other police officers on Beacon Street, about a block from Allen's apartment, where the police searched Thomas, provided him with $50 of pre-recorded money, and placed a wire-transmitting device under his clothes. T.355, 358-60.

The next day, Allen called Thomas in the afternoon and told him that if he wanted to purchase crack he needed to come to her apartment before she and her friends left for the evening. T.354. When Thomas (wearing the wire-transmitter) arrived at Allen's apartment, he asked to buy $50 worth of crack cocaine, and gave $50 to Ray. T.358. Petitioner and Ray then went into the bathroom and one of them said that they would prepare a special bag of crack for Thomas. After Petitioner and Ray returned from the bathroom, one of them gave Thomas a bag containing four or five cellophane bags of crack. T.360.

Thomas left the apartment and met with Choffin and several other police officers, and turned over the drugs that he had purchased. The police searched Thomas and gave him $20 for his

services. T.264, 361-62. Thomas also provided the police with a signed affidavit regarding his drug purchase which Choffin brought, along with a search warrant application, to a judge who issued a warrant authorizing a "no-knock" search of Allen's apartment and the individuals inside. T.270.

Later that day, Choffin and a team of officers rammed in the door to Allen's apartment where Allen, Petitioner, and Ray were present. T.392-93, 401-03, 444, 450. Petitioner and Ray attempted to flee by running into the bedroom, where they were apprehended. T.275-76. Choffin recovered $20 of the prerecorded buy money from Ray's pants. T.281, 395. On a coffee table in the living room, the police found a glass plate with several rocks of cocaine on it, a razor blade, fifteen individually-wrapped pieces of cocaine, a box of sandwich bags, some zip-lock plastic bags and $241 in cash, $30 of which was pre-recorded buy money. T.298. The police also recovered nine individually-wrapped pieces of cocaine from a plate on the couch, a plastic bag containing 20 rocks of cocaine from the bedroom floor, and two individual rocks of cocaine from the floor outside the bedroom. T.295, 299, 301, 407-09.

A forensic chemist employed by the Monroe County Public Safety Laboratory testified that the substance recovered by the police during the execution of the search warrant was, in fact, cocaine. T.480, 495.

## 2.    The Defense Case

Petitioner testified that he lived in Queens but had driven with Ray to Geneva on the afternoon of October 6, 2006, en route to visiting family in Rochester. T.504. Along the way, he lost contact with his family. Because Petitioner knew Allen in Geneva, they decided to stay with her until Petitioner could contact his cousin in Rochester. T.504-06, 516.

When Thomas arrived to Allen's apartment that day, Thomas and Allen went into the bathroom and closed the door. T.508. Petitioner could not hear anything. Thomas then left the apartment without a word. Petitioner was hungry, but there was no food in the refrigerator. Allen gave him money to buy food, and Petitioner gave Ray money to buy liquor. T.510. When Petitioner went into the bathroom to take a shower, he heard a booming sound and Allen scream. He ran into the bedroom, where he was arrested. At no point did he see any cocaine anywhere in the apartment. T.510-11.

## 3.    The Verdict and Sentencing

On June 15, 2007, the jury returned a verdict finding Petitioner and Ray guilty of all charges in the indictment T.681-87. On August 14, 2007, the trial court sentenced Petitioner to determinate, concurrent prison terms of five years for the criminal sale conviction and three years for the fourth degree criminal possession count, to be followed by two years of post-release supervision, and a consecutive prison term of three

years for the third degree criminal possession count, to be followed by two years of post-release supervision. S.20-21.

### B.    Post-Conviction Proceedings

Represented by new counsel, Slater appealed his conviction arguing that (1) the court improperly imposed consecutive sentences; (2) the court violated People v. Molineux, 168 N.Y. 264 (1901), by improperly permitting evidence of uncharged crimes that took place on the day before the crimes charged in this case; (3) the court improperly refused to charge the jury that Allen's refusal to testify at trial under the Fifth Amendment should not create a negative inference against petitioner; and (4) Petitioner was improperly penalized for proceeding to trial since he received a sentence that was higher than the pre-trial plea offer. Petitioner filed a pro se supplemental brief arguing that (1) his trial counsel was ineffective because of a conflict with Petitioner; and (2) an affidavit by Allen purporting to exculpate Petitioner should have been offered into evidence under the declaration against penal interest exception to the hearsay rule.

The Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed the conviction, and the New York Court of Appeals denied leave to appeal. People v. Slater, 61 A.D.3d 1328 (4th Dept.), lv. denied, 13 N.Y.3d 749 (2009).

Slater then pursued a pro se motion to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10

-6-

arguing that (1) trial counsel was ineffective for failing to subpoena Allen to secure her attendance at trial, move to introduce Allen's affidavit under the declaration against penal interest exception, and request a bill of particulars; (2) the trial court failed to place its findings on the record regarding its order requiring Petitioner to wear a stun belt at trial; and (3) the trial court improperly permitted the trial to commence before ruling on Petitioner's pro se motion to reargue a suppression hearing decision.

The trial court denied the motion in a decision and order dated November 9, 2009. Citing C.P.L. §§ 440.10(2) and (3),[1] the trial court held, without specifying which issues or which subsection of these statutory sections applied, that the issues raised by Petitioner were matters of record or could have been made part of the record. Relying specifically upon C.P.L § 440.10(2)(a), the trial court held that some of the issues had been raised and adjudicated on direct appeal and were thus mandatorily barred.

---

[1]

C.P.L. § 440.10(2) lists the circumstances under which a court is required to deny a motion to vacate the judgment—when the issue was record-based and the defendant unjustifiably failed to raise it on direct appeal, when the issue was previously determined on the merits in a proceeding other than an appeal from the judgment, or when the defendant was in the position to raise the issue in an earlier C.P.L. § 440.10 motion but failed to do so. See N.Y. CRIM. PROC. LAW § 440.10(2)(a)-(c). C.P.L. § 440.10(3) states that the "may" deny a motion to vacate a judgment, but is not required to do so, when the defendant unjustifiably failed to raise the issue prior to sentence and the issue was not subsequently determined on appeal, when the issue was previously determined on the merits in a proceeding other than an appeal from the judgment, or when the defendant could have raised the issue in an earlier C.P.L. § 440.10 motion but did not do so. See N.Y. CRIM. PROC. LAW § 440.10(2)(a)-(c).

On September 20, 2009, Petitioner sought reconsideration of the denial of the C.P.L. § 440.10 motion, arguing that the trial court had erroneously concluded that the Appellate Division, in affirming the conviction, had addressed the merits of his ineffective assistance of counsel claim. Petitioner also moved for the trial court's recusal from consideration of the C.P.L. § 440.10 motion, based on the grievances Petitioner had expressed regarding the judge's allegedly biased conduct over the course of the trial. The prosecution did not file opposition papers.

On October 25, 2010, the trial court summarily denied recusal and also denied reconsideration for the reasons set forth in its initial decision denying the motion. The Appellate Division denied leave to appeal on April 27, 2010.

### D.   The Federal Habeas Proceeding

This timely habeas petition followed in which Slater raises the following grounds for relief: (1) the trial court misinterpreted the Appellate Division's ruling concerning Petitioner's ineffective assistance claim and erroneously relied on C.P.L. § 440.10(2)(a) to dismiss his motion to vacate the judgment; (2) the trial court should have recused itself from consideration of the C.P.L. § 440.10 motion based upon Petitioner's complaints about the court's allegedly biased conduct over the course of the trial; (3) trial counsel provided ineffective assistance by trying to persuade Petitioner to accept a plea offer despite the existence

-8-

of exculpatory evidence, refusing to communicate with Petitioner, failing to request a bill of particulars, failing to obtain a subpoena to secure Allen's attendance at trial, failing to make independent objections and relying on the objections of codefendant's counsel, and failing to move for the admission of Allen's affidavit under the declaration against penal interest exception to the hearsay rule; (4) the trial court failed to place findings on the record supporting its order that Petitioner wear a stun belt; (5) the trial court allowed the trial to commence before ruling on Petitioner's motion for reconsideration of the denial of a suppression motion; and (6) the trial court erroneously allowed the admission of evidence of uncharged crimes in violation of People v. Molineux, supra.

In his answer, Respondent asserts the defense of non-exhaustion and/or procedural default as to virtually all of Petitioner's claims. Respondent argues that, in any event, none of the claims have merit. Petitioner submitted a reply and an addendum to the reply. The matter is now fully submitted and ready for decision. For the reasons that follow, Slater's request for a writ of habeas corpus is denied and the petition is dismissed.

## III. Exhaustion

It is well settled that a federal court may not consider the merits of a claim unless that claim was fairly presented to the "highest state court from which a decision can be had." Daye v.

Attorney Gen'l of N.Y., 696 F.2d 186, 190 n.3 (2d Cir. 1982) (en banc). A petitioner may apprise the state courts of the constitutional nature of his claims by explicitly arguing that a federal constitutional right was violated, either by citing to the Constitution, or "even without citing chapter and verse of the Constitution" by "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." Smith v. Duncan, 411 F.3d 340, 348 (2d Cir. 2005) (citing Daye, 696 F.2d at 194).

### A.    The Ineffective Assistance of Counsel Claims

Respondent concedes that Petitioner has partially exhausted his claim that his trial counsel provided ineffective assistance because, in his C.P.L. § 440.10 motion, Petitioner asserted in federal constitutional terms that his trial counsel was ineffective for failing to subpoena Allen, failing to move to introduce Allen's affidavit, and failing to request a bill of particulars. Petitioner then sought leave to appeal the denial of the motion to the Appellate Division. Therefore, these portions of his ineffective assistance claim are exhausted.

-10-

However, as to Petitioner's claims trial counsel was ineffective for attempting to persuade Petitioner to accept the plea offer, refusing to communicate with Petitioner, and failing to make independent objections at trial, Respondent asserts the defense of non-exhaustion. In his reply (Dkt. #20), Petitioner conceded that the subclaim concerning the failure to make independent objections is unexhausted, and in his amendment to the reply (Dkt. #21), Petitioner agreed to withdraw any claims that this Court finds to be unexhausted. Accordingly, the claim that trial counsel was deficient in failing to make objections is withdrawn from the petition.

With regard to the contentions that trial counsel erroneously attempted to persuade Petitioner to accept the plea offer and refused to communicate with Petitioner, these claims were raised for the first time in the petition. Thus, Petitioner has not completed one full round of state appellate court review. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Because they are off-the-record claims, Petitioner could file another C.P.L. § 440.10 motion and not be foreclosed by the mandatory dismissal rule in C.P.L. § 440.10(2)(c). As noted above, however, Petitioner has agreed to withdraw claims that the Court determines are unexhausted. Accordingly, these claims of ineffective assistance are withdrawn.

All three of these contentions regarding trial counsel's performance are, in any event, without merit. Slater has not explained what "independent objections" trial counsel should have made, and thus he is unable to show that counsel was deficient or demonstrate how he was prejudiced. Counsel's alleged coercion of Slater with regard to a guilty plea is moot, since he elected to proceed to trial. Slater's claim that counsel failed to communicate with him is wholly unsubstantiated.

**B.   Trial Court Errors**

### 1.   Failure to Place on the Record the Reasons for Ordering Petitioner to Wear a Stun Belt

Petitioner contends that the trial court failed to make a record regarding its order that he wear a stun belt during trial. Respondent argues that Petitioner, when asserting this claim in his C.P.L. § 440.10 motion, did not present it in explicit constitutional terms or assert them in such a way as to fairly apprise the state court that federal constitutional claims were being asserted. Petitioner contends that he sufficiently exhausted the claims since he argued that he was denied his constitutional right to due process when the trial judge failed to make a finding on the record why the use of a stun belt was warranted. See Resp't Ex. H (Notice of Motion at 2, Memorandum of Law at 11-12). The Court agrees with Petitioner that he exhausted the stun belt claim since he explicitly asserted that his due process rights were

violated and relied on cases that employed a federal constitutional analysis, see Daye, 696 F.2d at 194. The Court therefore finds that the claim was sufficiently exhausted for purposes of habeas review.

### 2. Failure to Rule on Pro Se Motion for Reconsideration of Suppression Motion

Petitioner contends that the trial court erroneously commenced the trial prior to ruling his pro se motion for reconsideration of the suppression motion. Respondent argues that this claim also is unexhausted because it was not fairly presented to the state courts.

In his C.P.L. § 440.10 motion Slater asserted that his constitutional right to due process was violated by the trial court's failure to rule on his pro se motion, but that is insufficient to fairly present a constitutional claim. Petrucelli v. Coombe, 735 F.2d 684, 688 (2d Cir. 1984) ("[A] mere statement that 'due process' rights have been violated does not necessarily give rise to a specific federal constitutional claim. 'Due process,' like 'fair trial,' can be a catchphrase used by habeas petitioners as part of an allegation about any type of trial court error, including errors in rulings based on state law.") (citation omitted). The only cases upon which Slater relied to support this claim were state cases analyzing the failure to decide a suppression motion in the first instance as a violation of New York state statutory law, C.P.L. § 710.40(3). Therefore, the Court agrees with Respondent that the claim is unexhausted.

### C. The C.P.L. § 440.10 Court's Misinterpretation of the Appellate Division's Ruling Concerning Petitioner's Ineffective Assistance Claim

Petitioner first asserted the contention that the C.P.L. § 440.10 court improperly denied his motion based upon its misinterpretation of the Appellate Division's ruling in his motion for reconsideration of the denial of C.P.L. § 440.10 relief.[2] Respondent argues that it is therefore unexhausted because a motion for reconsideration is not a proper vehicle for raising a new claim not previously raised. The Court does not have to decide the exhaustion issue with regard to this contention because it does not state a separate ground for habeas relief, but instead goes to the adequacy of a possible procedural bar. Put another way, Petitioner's contention is not that the C.P.L. § 440.10 court erroneously adjudicated his ineffective assistance claim on the merits, but rather that the C.P.L. § 440.10 court erroneously dismissed the claim without reaching the merits because it relied upon C.P.L. § 440.10(a) based upon its misreading the Appellate Division's decision. Thus, Petitioner is arguing that the C.P.L. § 440.10 court erroneously relied upon a state procedural rule, C.P.L. § 440.10(2)(a), which requires dismissal of a claim if it

---

[2]

A habeas petitioner can exhaust a claim through a C.P.L. § 440.10 motion for vacatur. See, e.g., Sanford v. Senkowski, 791 F. Supp. 66, 69 (E.D.N.Y. 1992) (noting that the exhaustion doctrine requires only that a habeas petitioner present his claim once on direct or collateral review).

was already adjudicated on the merits on direct appeal. In sum, this contention does not state a separate ground for habeas relief.

### D. The Trial Court's Failure to Recuse Itself from the C.P.L. § 440.10 Motion

After the trial court denied his motion for vacatur under C.P.L. § 440.10, Petitioner asserted, in his motion for reconsideration, that the court should have recused itself. In an order dated October 25, 2010, the trial court summarily rejected this claim and denied reconsideration. In his notice of appeal, Petitioner stated that he was appealing from each and every part of the trial court's November 9, 2009 order denying his motion to vacate. He did not mention the October 25, 2010 order denying reconsideration, which was where he first asserted the recusal claim.

Respondent notes that "[a] motion for reconsideration, however, is not a proper vehicle for a new claim not previously raised on appeal. Such a motion, therefore, does not "properly present" a claim to the state court so as to exhaust the claim." Foreman v. Garvin, No. 99 Civ. 9078 GBD AJP, 2000 WL 631397, at *9 (S.D.N.Y. May 16, 2000) (internal citations omitted; citing, inter alia, Cuomo v. Fay, 257 F.2d 438, 441 (2d Cir.1958), cert. denied, 358 U.S. 935, 79 S.Ct. 325 (1959)), report and recommendation adopted Nov. 16, 2000. Moreover, because Slater did not specifically seek appellate review of the reconsideration motion, he did not present the recusal claim to the "highest state court

-15-

from which a decision can be had," Daye, 696 F.2d at 190; see N.Y. CRIM. PROC. LAW § 450.15(1); see also Vincent v. Lape, 07 Civ 6007, 2007 WL 4224198, at *3 (W.D.N.Y. Nov 26. 2007) (holding that petitioner required "to seek discretionary leave to appeal the denial of [ ] motion [to vacate judgment]" to intermediate appellate court "in order to exhaust any of the claims raised therein"). Thus, as Respondent argues, the claim is unexhausted. Slater has agreed to withdraw any claims that this Court determines to be unexhausted, and, accordingly, the recusal claim is withdrawn.

Moreover, even if it were unexhausted, it would not provide a basis for habeas relief. In order to prevail on a claim of judicial bias, Slater must show that he was denied "an unbiased and impartial judge without a direct personal interest in the outcome of the hearing." Ungar v. Sarafite, 376 U.S. 575, 584 (1964). To support his claim that the judge should have recused himself, Slater asserts that the judge made facial gestures to the prosecution during the trial, refused to rule on several of his motions, ruled on the merits of only one of the four claims in his C.P.L. § 440.10 motion, improperly denied his request for a new trial at a pre-trial hearing, failed to place on the record its reasons for forcing Petitioner to wear a stun belt at trial, permitted Allen to perjure herself at her plea allocution in order

to counter her affidavit that exonerated Petitioner, and declined to provide petitioner with the transcripts of a <u>Gomberg</u> hearing.[3]

There is no evidence in the record that the trial judge made faces at the prosecution during the trial, suborned perjury from Allen during her plea allocution, or ordered Petitioner to wear a stun belt during the trial. Petitioner's claim that the trial court refused to rule on his motions appears to refer to <u>pro</u> <u>se</u> motions that Petitioner filed while represented by counsel, <u>see</u> S.5-6, 7-8, 12-13. However, as Respondent argues, the trial court properly declined to rule on these motions. <u>See</u> <u>Jones v. Barnes</u>, 463 U.S. 745, 754 (1983).

The remainder of Petitioner's complaints, even taken at face value, do not approach the level of conduct necessary to show judicial bias. <u>See</u> <u>Francolino v. Kuhlman</u>, 365 F.3d 137, 143 (2d Cir. 2004) (Judicial rulings and judicial remarks during the course of a proceeding "that are disapproving of, or even hostile to, counsel, the parties, or their cases do not support a claim of bias or partiality unless they reveal 'such a high degree of favoritism or antagonism as to make fair judgment impossible.'") (quoting Liteky v. United States, 510 U.S. 540, 555 (1994)); <u>McMahon v. Hodges</u>, 382 F.3d 284, 290 (2d Cir. 2004) (trial judge's remark that, given the evidence he had heard at co-defendant's trial, the "People have the ability to prove [petitioner] guilty

---

[3]        <u>People v. Gomberg</u>, 38 N.Y.2d 307 (1975).

-17-

beyond a reasonable doubt[,]" did not amount to the "deep-seated favoritism or antagonism that would make fair judgment impossible" so as to require recusal) (quoting <u>Liteky</u>, 510 U.S. at 555).

### E. Erroneous Admission of Uncharged Crimes Evidence in Violation of <u>People v. Molineux</u>

Respondent contends that Petitioner's <u>Molineux</u> claim is unexhausted because Petitioner failed to present it in constitutional terms when he raised it in his brief on direct appeal. The Court agrees that Slater's Appellate Division brief fails to meet any of the four methods outlined in <u>Daye</u> for "fairly presenting" a federal constitutional claim in state court. The Appellate Division brief does not cite either the federal or New York state constitution but instead discusses and cites cases concerning the state common-law evidentiary rule elucidated in <u>People v. Molineux</u>, 168 N.Y. 264 (1901), and its progeny. The argument concerning the <u>Molineux</u> claim contains not even a passing reference to a constitutional right. Additionally, this particular evidentiary claim does not call to mind a specific right protected by the federal Constitution nor does it allege a pattern of facts that is well within the mainstream of federal constitutional litigation. <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991) (explicitly declining to rule whether the introduction of uncharged crimes evidence can violate due process) Thus, the <u>Molineux</u> claim

is also unexhausted. <u>Accord</u>, <u>e.g.</u>, <u>Maxwell v. Greiner</u>, 04 Civ 4477, 2008 WL 2039528, at *5 (E.D.N.Y. May 12, 2008).

This claim must be deemed exhausted but procedurally defaulted because Slater has no state-court avenue by which to exhaust this claim. <u>See</u> <u>Grey v. Hoke</u>, 933 F.2d 117, 120-121 (2d Cir. 1991). Slater has already used the one direct appeal to which he is entitled under New York state law, <u>see</u> N.Y. COURT RULES § 500.20(a). If he were to raise it in a motion to vacate in the trial court, it would be mandatorily dismissed because it is record-based claim which could have been raised on direct appeal. <u>See</u> N.Y. CRIM. PROC. LAW § 440.10(2)(c).

In order to overcome the procedural default, Slater must show (1) cause for the default and actual prejudice resulting therefrom; or (2) that the habeas court's failure to consider the claims will result in a fundamental miscarriage of justice. <u>Aparicio v. Artuz</u>, 269 F.3d 78, 89-90 (2d Cir. 2001).

Cause can be established by showing that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," or that the petitioner received constitutionally ineffective assistance of counsel. <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). Prejudice is shown if there is "reasonable probability" that the result of the proceeding would have been different absent the constitutional violation. <u>Strickler v. Greene</u>, 527 U.S. 263, 289 (1999). A miscarriage of justice

occurs "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent. . . ." <u>Murray v. Carrier</u>, 477 U.S. at  496. In this context, "'actual innocence' means factual innocence, not mere legal insufficiency." <u>Bousley v. United States</u>, 523 U.S. 614, 623-24 (1998) (citation omitted).

Slater has not attempted to demonstrate cause and prejudice, but he does argue that the Court's refusal to entertain the claims will result in a fundamental miscarriage of justice because he is actually innocent. Slater relies upon Allen's affidavit stating that neither he nor Ray were involved in dealing drugs from her apartment. Although a habeas petitioner is not bound by the rules of evidentiary admissibility in presenting alleged new evidence of actual innocence, he nevertheless must be able to establish that the evidence is "reliable," <u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995). No such showing of "reliability" is possible on the record before this Court, given that Allen later contradicted her affidavit during her plea allocution, in which she made statements under oath and in open court, inculpating Petitioner in the sale of crack cocaine to the informant and in the drug-dealing that was occurring at her apartment. Accordingly, Slater cannot avail himself of the fundamental miscarriage of justice exception, and the <u>Molineux</u> claim is dismissed as procedurally defaulted.

## IV.  Merits of the Petition

### A.   Ineffective Assistance of Trial Counsel

Petitioner claims, as he did in his CPL § 440 motion (Exhibit H at 5, 8) that his trial counsel was ineffective for failing to subpoena Allen to testify, failing to move to introduce Allen's affidavit under the declaration against penal interest exception to the hearsay rule, and failing to request a bill of particulars. Habeas Petition ("Pet."), ¶ 12. Citing C.P.L. §§ 440.10(2) and (3),[4] the trial court held, without specifying which issues or which subsection of these statutory sections applied, that the issues raised by Petitioner were matters of record or could have been made part of the record. Relying specifically upon C.P.L § 440.10(2)(a), the trial court held that some of the issues had been raised and adjudicated on direct appeal and were thus mandatorily barred.

Respondent argues that these claims, although exhausted, are procedurally defaulted because the C.P.L. § 440.10 court relied

---

[4]

C.P.L. § 440.10(2) lists the circumstances under which a court is required to deny a motion to vacate the judgment-when the issue was record-based and the defendant unjustifiably failed to raise it on direct appeal, when the issue was previously determined on the merits in a proceeding other than an appeal from the judgment, or when the defendant was in the position to raise the issue in an earlier C.P.L. § 440.10 motion but failed to do so. See N.Y. CRIM. PROC. LAW § 440.10(2)(a)-(c).  C.P.L. § 440.10(3) states that the "may" deny a motion to vacate a judgment, but is not required to do so, when the defendant unjustifiably failed to raise the issue prior to sentence and the issue was not subsequently determined on appeal, when the issue was previously determined on the merits in a proceeding other than an appeal from the judgment, or when the defendant could have raised the issue in an earlier C.P.L. § 440.10 motion but did not do so. See N.Y. CRIM. PROC. LAW § 440.10(2)(a)-(c).

upon an adequate and independent state law ground or grounds to dismiss them.

### 1.    Adequate and Independent State Ground Doctrine

A habeas court may not review a federal issue when the last state court to rule on the claim rested its decision upon "a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). The "plain statement rule" of Michigan v. Long, 463 U.S. 1032, 1042 (1983), applies to habeas review as well as to direct review and that, therefore, a state procedural default does not bar consideration of a federal claim on habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedure bar. Harris v. Reed, 109 S. Ct. 1038, 1043 (1989).

The C.P.L. § 440.10 court, in denying the three ineffective assistance claims (failure to subpoena Allen, failure to introduce Allen's affidavit, and failure prepare a bill of particulars) cited generally to C.P.L. §§ 440.10(2) and 440.10(3) and did not specify which subsection or subsections applied to which claim. The trial court also held that some of the claims were raised on direct appeal and denial was required pursuant to C.P.L. § 440.10(2)(a). Based upon this Court's review of the briefs, it appears that the claim of ineffective assistance based upon the failure to introduce Allen's affidavit was raised in Petitioner's pro se supplemental

-22-

appellate brief. That appears to be the only claim that was raised on direct appeal and again in the C.P.L. § 440.10 motion.

Although some of the subsections, such as C.P.L. § 440.10(2)(c), have been held to be adequate and independent state grounds, the law is not clear as to whether others, such as C.P.L. § 440.10(2)(a), are sufficient to create a procedural default. See Garner v. Superintendent of Upstate Corr. Fac., No. 9:01-CV-0501 (LEK/DEP), 2007 WL 2846907, at *21 (N.D.N.Y. Sept. 26, 2007) (noting the "diverging views regarding which standard a federal habeas court should apply when a state court ruling relies on CPL § 440.10(2)(a)"; in light of the ambiguity in the state court's holding on petitioner's C.P.L. § 440.10 motion, habeas court conducted a de novo review of claim) (citing Aparicio v. Artuz, 269 F.3d at 93. Rather than "untangle the complicated procedural bar issues", Soto v. Portuondo, No. 02-CV-28, 2004 WL 2501773, at *5 (E.D.N.Y. Nov. 5, 2004), the Court shall review Petitioner's ineffective assistance claims on the merits since the issues are "easily resolvable," id.

## 2. Merits of the Ineffective Assistance Claims

### a. Legal Standard

In order to establish that he received the ineffective assistance of trial counsel, Slater must show both that his attorney provided deficient representation and that he suffered

-23-

prejudice as a result. Strickland v. Washington, 466 U.S. 668, 687 (1984). Petitioner must show that "counsel's representation fell below an objective standard of reasonableness," and that counsel's conduct "so undermined the proper functioning of the adversarial process" that the process "cannot be relied on as having produced a just result." Id. at 686, 688. Prejudice has occurred where there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. Although the Strickland standard is two-pronged, a reviewing court need not address both. See id. at 697 (noting that most ineffectiveness claims falter on the prejudice prong and stating that where a court can "dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice," which will often be the case, the court should do so).

### b.   Counsel's Alleged Errors

### 1.) Failure to Subpoena Allen

First, Petitioner claims that trial counsel was ineffective for failing to subpoena Allen, who introduced the informant (Thomas) to Petitioner, to testify. At trial, Allen invoked her Fifth Amendment privilege against self-incrimination, T.148-50, and thus became unavailable to testify. See Latine v. Mann, 25 F.3d 1162, 1166 (2d Cir. 1994) ("A declarant is unavailable for purposes of Confrontation Clause analysis if he invokes his Fifth Amendment

privilege against self-incrimination and refuses to testify at trial.") (citations omitted). Defense counsel's decision not to subpoena Allen–a witness who would not provide any testimony, let alone testimony useful for the defense–does not render his representation ineffective. See Greiner v. Wells, 417 F.3d 305, 323 (2d Cir. 2005) (no ineffective assistance of counsel where "insofar as [trial counsel] believed that [an uncalled witness] would have refused to testify by invoking a valid privilege . . . [counsel] acted consistently with the norms of practice reflected in the ABA Standards and with well-established New York law" which hold that it is 'wholly improper in most situations to . . . allow[ ] a party to parade a witness before the jury for the sole purpose of eliciting in open court the witness' refusal to testify'").

### 2.) Failure to Introduce Allen's Jailhouse Affidavit

Petitioner's second contention is that trial counsel was ineffective for failing to introduce, under the declaration against penal interest exception to the hearsay rule, a statement by Allen that she made while in prison but before she pled guilty. In the statement, Allen asserts that Petitioner and Ray were unaware that she had drugs in her apartment and had no involvement in her drug-dealing. Allen also states that she had given them money to buy food shortly before the police executed the search warrant. See Resp't Ex. O. Allen signed this statement on December 13, 2006,

approximately four months before she pled guilty and implicated
Petitioner and Ray during her plea allocution. See T 237-38.

Allen's statement would not have been admissible as a
declaration against penal interest under New York state evidentiary
law, which required a showing that (1) Allen was unavailable as a
witness at trial; (2) when the statement was made she "[was] aware
that it was adverse to [her] penal interest;" (3) she had
"competent knowledge of the facts underlying the statement;" and
(4) "most important, supporting circumstances independent of the
statement itself [were] present to attest to its trustworthiness
and reliability." Barnes v. Burge, 372 Fed. Appx. 196, 201, 2010 WL
1568599, *3 (2d Cir. Apr. 21, 2010) (unpublished opn.) (citing
People v. Settles, 46 N.Y.2d 154, 167 (1978)). "The basis for this
exception lies in the belief that a statement asserting matters
directly endangering one's penal interest by admitting facts that
may lead to criminal liability is unlikely to be deliberately
false." Settles, 46 N.Y.2d at 167.

Here, only two of the four Settles criteria were present-
unavailability and competent knowledge. Allen's invocation of her
Fifth Amendment privilege rendered her unavailable. See Latine v.
Mann, 25 F.3d at 1166.  In light of her plea allocution in which
she admitted first-hand involvement in the drug sales, she had
competent knowledge of whether Petitioner was also a participant.
However, it is questionable whether the statement was truly self-

inculpatory, given the context in which Allen made it—while she was
in prison, facing felony drug charges, and represented by counsel
who later obtained a favorable plea offer from the prosecution. See
Ennis v. Kirkpatrick, 10 Civ 4023, 2011 WL 1118604, at *9 (S.D.N.Y.
Mar. 28, 2011) (finding that it was "questionable" whether the
witness would have viewed the statements as being against his penal
interest, given that they were made at the prosecutor's office, in
the presence of his attorney, at a time when he was already being
prosecuted for the offense and as part of a proffer in which he
apparently sought to obtain an advantage in exchange for his
cooperation; thus, the witness "was in control of whether any
statement he made could be used against him and, if it was, it
would only be because he had reached an agreement with the
prosecution that he deemed sufficiently valuable to justify such a
result"), report and recommendation adopted, 2011 WL 2555994
(S.D.N.Y. June 27, 2011). As to the fourth Settles criterion, there
are "no circumstances independent of the statement itself,"
Settles, 46 N.Y.2d at 167, that convincingly support Allen's
assertions and assure their trustworthiness. Indeed, Allen's
affidavit and subsequent plea allocution are inconsistent. Allen's
assertion that Petitioner was "totally ignorant" about her drug-
dealing was consistent with Petitioner's trial testimony denying
knowledge there were drugs in the apartment, but this crucial
aspect of the statement was flatly contradicted by Allen's plea

allocution. T.237-38. With two elements of the <u>Settles</u> test lacking, there is no reasonable probability that trial counsel would have been able to have Allen's affidavit admitted into evidence. Petitioner accordingly cannot have been prejudiced by counsel's failure to try.

### 3.) Failure to Request a Bill of Particulars

The third error assigned to trial counsel is that he failed to request a bill of particulars. A defense attorney's failure to request a bill of particulars, in an of itself, does not constitute ineffectiveness. <u>Jelinek v. Costello</u>, 247 F. Supp.2d 212, 274 (E.D.N.Y. 2003) (citation omitted). A petitioner must demonstrate that counsel's failure to demand a bill of particulars was not motivated by a reasonable trial strategy and that the failure to do so resulted in prejudice. <u>Id.</u>

Here, however, Petitioner cannot make the required showing because the prosecution's response to defense counsel's discovery demand included the date, time and places of each of the crimes charged. The prosecution also supplied the detective's affidavit in support of the search warrant application and the warrant itself, which included the factual basis for the application, a description of Allens' apartment, and a physical description of Petitioner and Ray. Thus, prior to trial, Petitioner was in receipt of all the information that would have been included in a bill of particulars, and he therefore was not prejudiced by counsel's omission. <u>See</u>,

-28-

e.g., Burch v. Millas, 663 F. Supp.2d 151, 177-78 (W.D.N.Y. 2009) (where indictment alleged general time and place of the crime, defense counsel's failure to demand bill of particulars, even if deficient performance, did not cause prejudice to defendant and, therefore, was not ineffective assistance; a demand for bill of particulars would not have required particularization beyond the time span of the criminal allegations before the court).

**B.   Trial Court's Failure to Make a Record Concerning Its Order Regarding the Stun Belt**

Petitioner claims that the trial court failed to place findings on the record supporting its order that Petitioner was required to wear a stun belt in court after he had an altercation with defense counsel. Respondent contends that the record in this case is insufficient to demonstrate that Petitioner did, in fact, wear a stun belt during trial. See Miller-El v. Cockrell, 537 U.S. 322, 358 n. 3 (2003) (noting that petitioner bears burden of proof in habeas proceedings); accord Harris v. Kuhlmann, 346 F.3d 330, 354 (2d Cir. 2003).

The transcripts of the proceedings contain no mention by any party of a stun belt. However, Petitioner has submitted copies of orders from the Ontario County Jail, submitted along with the C.P.L. § 440.10 motion, that required him to wear a stun belt on certain consecutive dates in June 2007, when the trial took place. See Resp't Ex. P. These documents do not explicitly indicate that Petitioner wore the stun belt in court, and Respondent argues that

the records from the Ontario County Jail are insufficient to establish Petitioner's contention that he was required to wear the stun belt during trial. The Court finds that the jail orders indicating that Petitioner wore a stun belt on certain dates, and the fact that the dates were days on which Petitioner's trial was conducted, provide circumstantial proof that Petitioner was outfitted with a stun belt for his court appearances on those dates.

Respondent alternatively argues that the claim is procedurally defaulted because the C.P.L. § 440.10 court relied upon an adequate and independent state ground to dismiss them. As noted above, the C.P.L. § 440.10 court cited several subsections containing procedural bars but did not specify which subsections applied to which claims. Due to the ambiguity in the state court's ruling and the potential complexity of the procedural bar issue, the Court shall review the stun belt claim as it is easily resolved.

Even if Petitioner could demonstrate that he wore a stun belt during his trial, pursuant to the judge's order or with the judge's knowledge, Petitioner has not demonstrated a due process violation.

The Supreme Court has clearly established that federal due process principles "prohibit[] the use of physical restraints *visible* to the jury during a criminal trial, absent a court determination that they are justified by an essential state interest specific to the defendant on trial." Deck v. Missouri,

544 U.S. 622, 624 (2005) (emphasis supplied). "Trial courts may not shackle defendants routinely, but only if there is a particular reason to do so." Id. at 627.

In Deck, the defendant was convicted of capital murder and during his sentencing phase, was shackled, in plain view of the jury, with leg irons, handcuffs, and a belly chain. Deck was sentenced to death, and the state appellate court affirmed. 544 U.S. at 624-25. The Supreme Court vacated the sentence, holding that "the Constitution forbids the use of visible shackles during the penalty phase, as it forbids their use during the guilt phase, *unless* that use is justified by an essential state interest-such as the interest in courtroom security-specific to the defendant on trial." Id. at 624 (emphasis in original; quotation marks omitted).

As noted above, there is no evidence that the stun belt was visible to the jury; notably, neither defense counsel nor Petitioner protested the use of the stun belt. Nevertheless, Deck requires the judge to do more than issue a cursory approval of a prison official's security recommendation, at least where the restraints are visible. See Deck, 544 U.S. 624. In such cases, the trial judge must make an individualized determination that the physical restraint is necessary. Id. at 629 ("Because significant interests are implicated by the use of restraints, before ordering the use of such devices, the trial court must make a 'determination, in the exercise of its discretion, that

-31-

[restraints] are justified by a state interest specific to a particular trial.'"). "[T]he Supreme Court has yet to consider the issue of whether and when a trial court, consistent with constitutional protections, may order a defendant to wear a stun belt[5] during his trial." <u>Earhart v. Konteh</u>, 589 F.3d 337, 348 (6th Cir. 2009), <u>cert.</u> <u>denied</u>, 131 S. Ct. 178, <u>reh'g</u> <u>denied</u>, 131 S. Ct. 814 (2010).

In contrast to <u>Deck</u>, 544 U.S. at 634, here there is no indication that the stun belt-assuming that Slater was forced to wear it during his trial-was, in fact, visible to the jury. The Sixth Circuit has held that "<u>Deck</u>'s facts and holding . . . concerned only *visible* restraints at trial" a limitation which the Supreme Court "was careful to repeat . . . throughout its opinion." <u>Mendoza v. Berghuis</u>, 544 F.3d 650, 654 (6th Cir. 2008) (emphasis in <u>Mendoza</u>) (citing <u>Deck</u>, 544 U.S. at 630 ("[v]isible shackling undermines the presumption of innocence"); <u>id.</u> at 632 ("[d]ue process does not permit the use of visible restraints if the trial court has not taken account of the circumstances of the particular case"); <u>id.</u> at 633 ("courts cannot routinely place defendants in shackles or other physical restraints visible to the jury during the penalty phase of a capital proceeding"); <u>id.</u> at 635 ("[w]here

---

[5]

The Seventh Circuit has "described the use of a stun belt as a 'method[ ] of restraint that minimize[s] the risk of prejudice' because it is hidden beneath a defendant's clothing." <u>Stevens v. McBride</u>, 489 F.3d 883, 899 (7th Cir. 2007) (quoting <u>United States v. Brooks</u>, 125 F.3d 484, 502 (7th Cir. 1997)).

a court, without adequate justification, orders the defendant to wear shackles that will be seen by the jury, the defendant need not demonstrate actual prejudice to make out a due process violation"). Thus, the Sixth Circuit held in a Section 2254 petition, that requiring the petitioner to wear a stun belt while acting as his own counsel, without any individualized determination of necessity by the trial court, did not violate his due process rights where the stun belt was not visible to the jury. Earhart, 589 F.3d at 348-49.

Assuming, however, that there was a Deck error, and that Slater was entitled to have the trial judge make an individualized determination that the stun belt was justified, the error is not grounds for reversal if it had no effect on the verdict because the Supreme Court has confirmed that harmless error analysis applies to the use of physical restraints on a criminal defendant at trial. Deck, 544 U.S. at 635. A habeas court assessing the prejudicial impact of a constitutional error in a state-court criminal trial must apply the harmless-error standard articulated in Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993). Fry v. Pliler, 551 U.S. 112, 127 S. Ct. 2321, 2326-28 (2007) (explaining that the Brecht harmless error standard of review subsumes the standards announced in the Anti-terrorism and Effective Death Penalty Act). Therefore, this Court must determine whether the Deck error had a substantial

and injurious effect or influence in determining the jury's verdict. <u>Brecht</u>, 507 U.S. at 637-38.

The Court finds that any constitutional error in employing the stun belt to restrain Petitioner did not have a substantial and injurious effect on the jury's verdict because, in the present case, the stun belt did not impinge upon the interests outlined in Deck, 544 U.S. at 630-31–namely, the effect of physical restraints on the jury's presumption of the accused's innocence; the possible interference with the prisoner's ability to communicate with his lawyer and otherwise participate in his defense; the potential for undermining the dignity, decorum, and objectivity of the court. Significantly, there is no evidence in the record that the jury actually saw the stun belt placed on Petitioner. Petitioner does not complain that the stun belt was visible, but rather states that he felt restricted in his movements. However,  he took the stand and testified in his defense. Obviously, unlike shackles, the stun belt did not prevent him from walking or using his hands to write notes during the proceeding. Finally, the evidence against Petitioner was overwhelming. Accordingly, even had constitutional error occurred, it would have been harmless.

## V.   Conclusion

For the reasons discussed above, the petition (Dkt. #1) filed by Terrence Slater is dismissed with prejudice. Because Petitioner has failed to make a substantial showing of a denial of a

-34-

constitutional right, the Court declines to issue a certificate of appealability. <u>See</u> 28 U.S.C. § 2253(c)(2).

  **SO ORDERED**.

        S/Michael A. Telesca

      _____
        MICHAEL A. TELESCA
       United States District Judge
DATED:  March 7, 2012
    Rochester, New York